UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5-06-CV-27

INTERNATIONAL ASSOCIATION OF MACHINISTS
AND AEROSPACE WORKERS, LODGE NO. 1720                    PLAINTIFF

v.

ISP CHEMICALS INC.                                       DEFENDANT

### MEMORANDUM OPINION

The parties have filed cross-motions for Summary Judgment.  Plaintiff filed for Summary

Judgment (Docket # 8), Defendant filed a Response to Plaintiff's Motion (Docket #11), and

Plaintiff replied to Defendant's response (Docket # 14).  Defendant also filed for Summary

Judgment (Docket # 9).  Plaintiff responded to Defendant's Motion (Docket # 12), and

Defendant replied (Docket # 13).  The matter is now ripe for adjudication.  For the following

reasons, the Court grants Summary Judgment in favor of the Defendant.

### BACKGROUND

This dispute arises between ISP Chemicals, Inc., an employer, and the Plaintiff, a labor

organization representing employees of Defendant.  Plaintiff and Defendant are parties to a

collective bargaining agreement ("the CBA") effective from January 8, 2005, until January 8,

2008.  On August 22, 2005, Plaintiff filed Grievance #2005-23, claiming that the ISP was not

abiding by the negotiated medical benefit rate structure set out in the "Benefits Book."  Soon

thereafter, Plaintiff requested that Defendant obtain an arbitrator to preside over the dispute.

Before arbitration proceedings started, Defendant notified Plaintiff that the matter in Grievance

1

#2005-23 was not substantively arbitrable and that Defendant would not submit to arbitration.

The parties agree that the Benefits Book is a separate document from the CBA. While the Benefits Book contains information about medical benefit rate structures, most of the Benefits Book refers to other matters. The last page of the Benefits Booklet contains the following disclosure:

> This booklet is not a contract or a summary plan description but solely intended to give you a short description of the main provisions of your ISP employee benefit programs. If any conflict should arise between the description in this booklet and the summary plan descriptions, plan documents or the trust agreements, the terms of the summary plan description, plan documents or trust agreements will, of course, govern in all cases. Copies of the official documents may be inspected upon making a request to the corporate human resources department (benefits department).

The parties have not contractually agreed that disputes arising out of matters in the Benefits Book are to be resolved by arbitration.

The parties also agree that the CBA is a binding agreement which contains a valid arbitration clause in Article X. The CBA provides for the arbitration of valid grievances, defined in Article X, Section 44 as "any difference of opinion or dispute between a representative of the Company and any employee or Union representative regarding interpretation or application of any provision of this Agreement." Article X, Section 52 further limits the scope of arbitration to matters directly addressed in the CBA, stating, "It is understood by and between the parties that matters involving general wage levels, existing job classifications (as set forth in this Agreement), and matters not specifically covered by this Agreement shall not be arbitrable."

The CBA briefly mentions employee medical contributions in Article XV, Section 98, stating, "Employee contributions for these coverages are defined in the benefits booklet." The

2

CBA does not further discuss the terms of the employee medical contributions plan.  However, the Plaintiff states that parties negotiated extensively regarding the plan during discussion and drafting of the CBA.  The Plaintiff posits that Article XV, Section 98, "specifically covers" the employee medical contributions plan in the CBA, making the matter proper for arbitration.  In the alternative, Plaintiff argues that Article XV, Section 98 of the CBA incorporates by reference the terms of the Benefits Booklet referring to the employee medical contributions plan, making the matter arbitrable.  Plaintiff also claims that the parties clearly intended the matter of the employee medical contributions plan to be arbitrable and governed under the CBA.  The Defendant claims that the CBA does not specifically discuss any matters establishing employee medical contribution plans and does not show any intent to append the employee medical contributions plan by reference.  Defendant also cites the language disclaiming any contractual enforceability in the Benefits Booklet as indicative of an intent not to make the employee medical contribution plan enforceable by arbitration.

## STANDARD

The Court decides as a matter of law whether the parties have contractually agreed to arbitrate a claim.  "[W]hether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination..."  *United Steelworkers of Am. v. The Mead Corp., Fine Paper Div.*, 21 F.3d 128, 131 (6th Cir. 1994).  The Court's role, however, "is limited to determining whether the arbitration provision of the agreement [is] susceptible of an interpretation that would make the grievance arbitrable."  *Id.* at 130 (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).  Therefore, in this Opinion, the Court does not consider the merits of Plaintiff's claim, but merely

3

whether it is suitable for arbitration. *Id.* at 131.

"[A]rbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 200 (1991) (quoting *Warrior & Gulf*, 363 U.S. at 582); *See also Mead*, 21 F.3d at 131. "Whether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract between the parties." *John Wiley & Sons v. Livingston*, 376 U.S. 543, 547 (1964). The issue in this matter is whether the Defendant agreed in the CBA to arbitrate matters relating to employee medical contributions.

In the Sixth Circuit, a Court must first determine whether a valid arbitration clause binds the parties. The Court must then determine whether the matter at issue is in the scope of the valid arbitration clause set out in the CBA. *See Mead*, 21 F.3d     at 131. Once the Court has determined that a valid arbitration clause applies, there is a presumption of arbitrability on related matters. *Id.* The Court should "resolve any doubts in favor of arbitration, and should not deny an order to arbitrate 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 648-51 (1986)).

The Court must examine whether the arbitration clause is broad or narrow to determine the strength of the presumption in favor of arbitrability. *See United Steelworkers of Am. v. The Duluth Clinic, Ltd.*, 413 F.3d 786, 788 (8th Cir. 2005)(citing *United Steelworkers of Am. v. Titan Tire Corp.*, 204 F.3d 858, 860 (8th Cir. 2000)). An arbitration clause is considered broad if it prescribes arbitration for any dispute arising out of the agreement or any controversy relating to

4

the interpretation of the agreement.  *See Duluth*, 413 F.3d at 788-89 (discussing examples of broad arbitration clauses).  "In cases involving broad arbitration clauses the Court has found the presumption of arbitrability 'particularly applicable' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'"  *Id.* (quoting *AT&T*, 475 U.S. at 650).  An arbitration clause is considered narrow if it limits the matters for arbitration specifically to those covered under the terms of the CBA.  *See id.* at 790.  If an arbitration clause is determined to be narrow, the Court must simply determine whether the dispute regards the subject matter set out in the CVA.

## ANALYSIS

The parties here agree that the CBA contains a valid arbitration clause.  The Plaintiff contends that the CBA arbitration provision defining grievances as "any difference of opinion or dispute between a representative of the Company and any employee or Union representative regarding interpretation or application of any provision of this Agreement" makes this a broad arbitration clause.  The Defendant counters that the CBA defines this as a narrow arbitration clause by providing that "matters not specifically covered by this Agreement shall not be arbitrable."  The Court agrees with the Defendant's interpretation, since it refers to the arbitration clause as a whole, while the Plaintiff's cited language merely refers to the definition of grievances which are just one requirement in filing an arbitrable claim.

Since the Court has determined that the arbitration clause in the CBA is narrow, a  milder presumption of arbitrability applies.  The Court must examine the CBA to find if it is susceptible to an interpretation where the matter of employee medical contribution plans is "specifically

5

covered." Plaintiff asserts that the cursory mention of employee health plans detailed in the Benefits Booklet allows the interpretation that the CBA covers the employee medical contributions plan. While the terms of the CBA would allow the interpretation that an employee medical contributions plan exists, the Court cannot agree that the CBA's mere mention of a employee medical contribution plan makes the details of the plan, absent from the CBA, proper matters for arbitration. The CBA does not mention anything about the technical matters at issue in Plaintiff's grievance. No interpretation of the CBA would include the details of the employee medical contribution plan which is at issue here.

In the alternative, the Plaintiff claims that CBA incorporated the terms of the employee medical contributions plan set out in the Benefits Booklet when it stated, "Employee contributions for these coverages are defined in the benefits booklet." The Court finds that this argument also fails. While the CBA clearly refers to definitions set out in the Benefits Booklet, it is not susceptible to the interpretation that the drafters intended some parts of the Benefits Booklet to be incorporated as terms of the CBA subject to arbitration. This position is bolstered by the unambiguous disclaimer at the conclusion of the Benefits Booklet, stating that the booklet does not set forth definitive standards to be enforced under a contractual theory. As the arbitration clause in the CBA only applies to the contractual terms specifically set out in the Agreement, the standards for the employee medical contributions plan set out in the noncontractual Benefits Booklet are not enforceable by arbitration.

Lastly, Plaintiff asserts that the mention of the terms in the Benefits Booklet and the extensive negotiation regarding the employee medical contributions plan terms during the drafting of the CBA evidence an intent by both the Plaintiff and Defendant to include the terms

6

in the CBA.  The Court agrees that this shows some intent to have set employee medical contributions standards.  However, the Court also considers that absence of the contribution standards set forth in detail in the CBA and that the presence of the disclaimer of the enforceability of the standards at the conclusion of the Benefits Booklet makes such an inference of intent impossible.  The only consistent interpretation of the parties' intent is that employee medical contributions standards were to be set; however, the standards were not determined as a component of the CBA.

## CONCLUSION

For the foregoing reasons, Summary Judgment is **GRANTED** in favor of the Defendant. An appropriate Order shall issue.